IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **JOSHUA SCOTT KELLEY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**NANCY A. BERRYHILL,** *Acting* )<br>*Commissioner, Social Security* )<br>*Administration***,** )<br>)<br>**Defendant**. ) | Case No.: 6:16-CV-1799-VEH |

## **MEMORANDUM OPINION**[1]

**I.**   **INTRODUCTION**[2]

Plaintiff Joshua Scott Kelley ("Kelley") brings this action under 42 U.S.C. § 405(g). Kelley seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for

---

[1] It seems that Kelley filed his case in the Jasper Division because he resides in Walker County, Alabama. (Doc. 1). However, the case caption on CM/ECF reads that this is a Southern Division case. (*See* CM/ECF). The Court **HEREBY DIRECTS** the clerk to correct CM/ECF to reflect that this is a Jasper Division case.

[2] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

disability insurance benefits ("DIB"). Kelley filed his application on October 24, 2011. The ALJ issued his first decision on August 13, 2013. (Tr. 13). However, upon review, the Appeals Council vacated the first decision and remanded the case. (*Id.*). The second decision, which is the one before this Court, was issued on November 9, 2015. (Tr. 37). This decision was also unfavorable to Kelley. After that, Kelley pursued and exhausted the administrative remedies available before the Commissioner. Kelley filed his Complaint in the Northern District of Alabama on November 6, 2016. (Doc. 1). Kelley filed his brief in support of his position on July 25, 2017. (Doc. 12). The Commissioner responded on September 25, 2017. (Doc. 15). This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record in this case and **AFFIRMS** the ALJ's decision.

## II. RELEVANT BACKGROUND

The alleged onset date is October 6, 2011. (Tr. 13). Kelley suffers from "cervical and lumbar degenerative disc disease, history of cervical stenosis, seizure disorder, and unspecified drug dependence." (*Id.* at 16) (emphasis omitted). He filed his application on October 24, 2011. On August 27, 2015, Administrative Law Judge Ronald Reeves held a hearing. (*Id.* at 43-73). The ALJ issued his decision on

November 9, 2015, which was unfavorable to Kelley. (*Id.* at 13-37). In that opinion, the ALJ found that Kelley could perform "jobs that exist in significant numbers in the national economy." (*Id.* at 36) (emphasis omitted). Kelley requested that the Appeals Council review his claim. (*Id.* at 3-5). They refused. (*Id.*).

## III. STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal

3

standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV.  STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

5

## V. FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016 (Exhibit 7D).

2. The claimant has not engaged in substantial gainful activity since October 6, 2011, the alleged onset date of disability (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the severe impairments of cervical and lumbar degenerative disc disease, history of cervical stenosis, seizure disorder, and unspecified drug dependence (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except he would be limited to frequent climbing of ramps and stairs and pushing or pulling with either or both upper extremities, and frequent balancing, stooping, kneeling, and crouching. He cannot reach overhead with either or both upper extremities or crawl. He cannot as a part of job functions climb ropes, ladders, or scaffolds, perform in concentrated exposure to extreme cold temperatures or vibration, or perform in exposure to work hazards. He would not be able to perform any jobs that would have urine drug screening as part of the job requirement either for initial application or on an ongoing basis through the term of employment.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on [REDACTED] and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 6, 2011, through the date of this decision (20 C.F.R. § 404.1520(g)).

(Tr. 16-37) (emphasis omitted).

## VI. ANALYSIS

### A. The ALJ Properly Considered the Evidence From the Treating and Non-treating Physicians.

Kelley argues that the ALJ did not show "'good cause' for dismissing the

opinions and treatment records of Dr. Bivona and Dr. Miller." (Doc. 12 at 30) (emphasis omitted). Kelley argues three reasons why the ALJ should have given their opinions more weight. (*See id.* at 34). Kelley argues that evidence supported their opinions, the evidence did not support a different conclusion, and the opinions "are not conclusory or inconsistent with his medical records." (*Id.* at 34). Additionally, Kelley argues that the ALJ was wrong to put so much reliance on two physicians who never examined him and displayed a degree of unfamiliarity with his records. (*See id.* at 36-39). Further, he argues that evidence showing his minimal daily activity supports his claim of disability. (*See id.* at 38-40).

In response, the Commissioner notes the ALJ's thorough opinion. (*See* Doc. 15 at 15). Specifically, the Commissioner recites, in detail, the ALJ's comments on treating physicians Dr. Bivona and Dr. Miller. (*See id.* at 16-20). The Commissioner argues that the ALJ gave the appropriate weight to the medical testimony. (*See id.* at 20-21).

In this case, it is important to remember two things. First, the residual functional capacity is determined by the ALJ, not the doctors. *See* 20 C.F.R. § 404.1527(d); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).[4]

---

[4] The Commissioner cites to the Eleventh Circuit in *Green* for the proposition that "an ALJ's RFC finding can be supported by substantial evidence even if there is no medical source statement in the record." (Doc. 15 at 27) (citing *Green v. Social Security Administration*, 223 F.

8

Second, this Court is constrained by the substantial evidence standard. *See Blooodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary. Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.").

Here, the Court concludes that the ALJ's committed no reversible error in his treatment of the treating and non-treating physicians' opinions.

### i. The ALJ's Decision To Discount the Treating Physician's Opinions Is Supported by Substantial Evidence.

First, Kelley argues that the ALJ should not have given little weight to treating physicians Dr. Bivona and Dr. Miller. (*See* Doc. 12 at 30-35). Generally, an ALJ should give "considerable weight" to a treating physician's testimony. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). But this is not always the case, and when it is not, "good cause" must be shown. *See id.* When this occurs:

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen*, 825 F.2d 278,

---

App'x 915, 922-23 (11th Cir. 2007)). "[T]he burden lies with the claimant to prove her disability." *Green*, 223 F. App'x at 923 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

> 280–81 (11th Cir.1987). We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991).

*Id.* Here, the ALJ articulated his reasons why he did not give considerable weight to the treating physicians. (Tr. 30-31). The ALJ pointed to medical records from the Preferred Pain Associates of Alabama, P.C. and Dr. Miller to support his conclusion. (Tr. 30); *see e.g.* (Tr. 816) (Preferred Pain Associates of Alabama record from March 12, 2015, noting that Kelley's back pain was "doing good"); (*Id.* at 820) (Preferred Pain Associates of Alabama record from February 12, 2015, noting that Kelley was "doing well" with his medications); (*Id.* at 822) (Preferred Pain Associates of Alabama record from March 13, 2015, noting that Kelley's back pain was "doing good"); (*Id.* at 787) (Dr. Miller's record noting that pain was "made tolerable by taking Opana"). Additionally, the Court notes the existence of records that indicate that Kelley's pain was being managed. *See e.g.* (*Id.* at 577) (record from Dr. Miller noting, among other things, that neck and lower back pain was reduced from a 10/10 to a 2/10 after taking his medicine); (*Id.* at 545) (record from Dr. Miller noting that neck pain was reduced after medication); (*Id.* at 790) (record from Dr. Miller noting that "[t]he pain is well controlled with Opana, which enables him to work for Alabama Power"); (*Id.* at 794) (record from Dr. Miller noting that "[a]s long as he

takes Norco, his pain is tolerable, which enables him to work for Alabama Power"); (*Id.* at 798) (noting the benefits of Norco). The existence of these records is not to say that there are not other examples where Kelley was not doing too well with managing his pain. Those records exist, and the ALJ noted them in his opinion. (*See id.* at 29).

Further, the ALJ did not ignore the treating physicians' opinions. (*See id.* at 30-31). He merely contrasted their conclusions in statements to counsel (and on an attending physician form) to the longitudinal medical record formed over the previous months. (*See id.*). This contrast was proper for the ALJ's evaluation of the consistency of the physicians' statement.

Kelley makes good arguments reciting Dr. Miller's and Dr. Bivona's opinions. (*See* Doc. 12 at 30-34). However, that is not enough. Kelley must show why the ALJ's opinion (that the record did not support the severity alleged in their opinions) was not supported by substantial evidence. He was unable to make that showing. Upon review, this Court will not disturb the ALJ's findings on this matter, finding them supported at least by substantial evidence.

> **ii. Kelley Has Not Shown That the ALJ Erred in Relying on the Non-treating Physicians' Testimony.**

Kelley emphasizes that non-treating physician Dr. Todorov made several misstatements regarding his medical record. (*See* Doc. 12 at 36). He argues that the

ALJ should not have given this opinion "'significant weight'" because of this "blatant incompetence." (*Id.*); (*But see* Tr. 33) (giving "significant weight" to Dr. Todorov's opinion). The Commissioner argues that the ALJ considered the entire record and is the one responsible for determining the RFC. (*See* Doc. 15 at 25-27). The Court reviewed the examination of Dr. Todorov. (Tr. 48-64). Kelley was able to effectively cross-examine Dr. Todorov on his opinions, and the ALJ was there to hear this exchange. (*See generally id.* at 47-66). Even though Dr. Todorov's testimony was mistaken at times, the ALJ is still entitled to give weight to his opinion if he finds it is supported by the record. (*See id.* at 33). Further, these misstatements seemed more akin to moments of confusion in a case where Kelley's attorney admitted that the record was voluminous. (*See id.* at 63) ("That's okay. There's a lot of records here."). Further, Kelley had the chance to ask Dr. Todorov if his misunderstandings changed his opinion of the case, but for reasons unclear to the Court, neglected to do so. Even if there was an error in relying on Dr. Todorov, Kelley has not shown the harm that flowed from it. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error). In other words, it does not immediately follow that Kelley has met his burden to prove disability if the ALJ does not consider Dr. Todorov's testimony.

Kelley argues that the ALJ should not have given "significant weight" to non-treating physician Dr. Witkind's opinion for the simple reason being that it was two

years old. (*See* Doc. 12 at 36-37). However, the Commissioner notes that the ALJ noted that Dr. Witkind was the expert from 2013 and that the ALJ reviewed the record. (*See* Doc. 15 at 24-25). There is no error in taking Dr. Witkind's opinion for what it is worth and seeing if it comports with the later evidence. Here, the ALJ concluded that "Dr. Witkind's opinion . . . is consistent with the claimant's longitudinal treating medical records. His opinion is also consistent with the opinion of Dr. Todorov." (Tr. 31-32).

> **B.  The ALJ Properly Evaluated Kelley's Credibility.**

> This court has established a three part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986). The standard also applies to complaints of subjective conditions other than pain. *Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir.1989).

*Holt v. Sullivan*, 921 F.2d 1221, 1222 (11th Cir. 1991).

Kelley also argues that the ALJ did not evaluate his credibility properly, instead picking evidence that supported his theory of the case. (*See* Doc. 12 at 41, 46-47). In response, the Commissioner argues that the ALJ properly applied the relevant framework by viewing the record as a whole. (*See* Doc. 15 at 32).

13

Kelley argues that "the ALJ neglected to consider all of the objective tests and the combined impact of [his] pain and impairments on his overall condition." (Doc. 12 at 43). However, the ALJ did a thorough review of Kelley's condition. (*See e.g.*, Tr. 16-26). In the face of this in-depth review, the Court is not free to second guess and re-weigh the ALJ's decisions. *C.f. Bloodsworth v. Heckler*, 703 F.2d at 1239.

Kelley relies on the 11th Circuit in *McCruter* to argue that the ALJ did not consider all of Kelley's record. (*See* Doc. 12 at 43). *McCruter* states that: "It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (citing *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951)). However, *McCruter* does not dictate the outcome here because the ALJ did consider "the record as a whole." *See id.*

Additionally, Kelley notes that the focus here should be on whether he can engage in gainful employment, not do household chores. (*See* Doc. 12 at 44) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Bennett v. Barnhart*, 288 F.Supp. 2d 1246, 1252 (N.D. Ala. 2003); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989)). Kelley criticizes the ALJ's discussion of his household activities. (*See*

14

*id.*). However, the ALJ was merely noting Kelley's seeming inconsistencies in his comments regarding his activity compared to the alleged pain. (Tr. 34). While household chores do not disqualify a claimant from benefits, that does not mean that it is a categorical error for an ALJ to even mention household chores. *C.f.* SSR 96-7p, 1996 WL 374186.

Kelley analogizes to the Eleventh Circuit's decision in *Lamb v. Bowen* to support his contention that "the record in this case contains exhaustive documentation of [his] medical conditions, and [his] credibility is clearly established." (Doc. 12 at 45). However, this case in unlike *Lamb v. Bowen.* First, this case is procedurally different. In *Lamb*, the ALJ actually found for the claimant, but the Appeals Council overturned that decision. *See Lamb v. Bowen*, 847 F.2d 698, 699-702 (11th Cir. 1988). Here, the ALJ found that Kelley was not disabled, and the Appeals Council declined to review. (Tr. 3-5, 37). In *Lamb*, the Eleventh Circuit seemed to place a special value on the ALJ's opinion, compared to the Appeals Council. *See Lamb*, 847 F.2d at 702. ("[T]he ALJ, who head the testimony and observed the appellant, found his complaints credible. Though not bound by it, some credence must be afforded this determination by the ALJ. The ALJ observed the claimant and was in a better position to evaluate his veracity."). Second, and more importantly, the ALJ fully evaluated the record and gave his reasons for making his determinations. (Tr. 16-35). He noted

15

places in the record where physicians were managing Kelley's pain. (*Id.* at 20-21). In doing so, he also recognized areas of the record showing Kelley's struggles with his pain, and he considered Kelley's entire condition together. (*See generally id.* at 16-35); (*See also id.* at 26) (noting that the ALJ considered the "combination of impairments").

Also, Kelley claims in his brief that "[he] has continuously attempted to manage his pain with <u>no relief</u>." (Doc. 12 at 45) (emphasis added). However, this statement is directly contradicted by the medical record. The ALJ cites where, in 2015, the Preferred Pain Associates of Alabama noted that Kelley was "doing good" and "doing well" on his medications. (Tr. 30). As another example, on January 3, 2012, Dr. Miller noted: "Pain prior to medication is 10/10. Pain after medication is 02/10." (Tr. 547). Kelley implies that the ALJ selectively chose the evidence to support his "theory of the case." (*See* Doc. 12 at 46). This is not a fair accusation in the face of the ALJ's lengthy opinion detailing the record. (Tr. 16-35). Further, "[a]n ALJ is not required to refer specifically to each piece of evidence in the record, but must sufficiently explain the weight given to 'obviously probative exhibits.'" *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Here, the ALJ did so.

Kelley argues that the ALJ did not properly consider the SSR 96-7p factors[5] and should have given deference to his credibility. (*See* Doc. 12 at 47). The Court disagrees. As the Court has explained, the ALJ considered the record as a whole, and his decision is supported by substantial evidence. (*See* Tr. 27).

Finally, Kelley states that "[s]ubstantial evidence in this case supports a finding

---

[5] The regulation states, in relevant part:

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186.

that Mr. Kelley's cervical pain and seizures, in conjunction with his numerous other severe conditions, can reasonably be expected to cause his symptoms and functional limitations." (Doc. 12 at 48). Kelley is confusing the standard here. Kelley has the burden to prove his disability. *See Vaugh v. Heckler*, 727 F.2d 1040, 1041-42 (11th Cir. 1984) ("[A] claimant has the burden of proving disability.") (citing *Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. 1981)). Substantial evidence is the standard used when the Court reviews the ALJ's opinion. *Bloodsworth*, 703 F.2d at 1239; *see also Hunter v. Social Sec. Admin., Commissioner*, 808 F.3d 818, 822 (11th Cir. 2015).

In conclusion, the ALJ's decision regarding Kelley's credibility is supported by substantial evidence.

## VII. CONCLUSION

In conclusion, the Court finds that the decision of the Commissioner is supported by substantial evidence. This might not be the decision that the Court would have reached had it been in the position of the ALJ; however, the ALJ followed the proper framework, considered the evidence as a whole, and made a reasoned decision supported by substantial evidence. While reasonable minds can differ here, substantial evidence gives deference to the ALJ. It would not be appropriate to disturb this decision. Throughout this case, the parties have spoken often about the future of Kelley's health and the unfortunate possibility of it

deteriorating. (*See* Doc. 12 at 8, 11, 25-26, 37); (Doc. 15 at 18, 31). The Court is sensitive to and understands those concerns. The opinion the Court issues today does not say that Kelley can never be found disabled and passes no judgment on potential future claims.[6] Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** this 15th day of February, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6] The Court notes, in passing, the following persuasive authority. The Eighth Circuit noted:

> Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision.

*Hillier v. Social Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007) (citing other sources). Further, then Chief Judge Posner of the Seventh Circuit noted:

> What is true is that under the collateral estoppel branch of res judicata, the judgment denying the earlier claim may bar the relitigation of issues essential to the second claim as well. But it need not, especially when the disabling condition is progressive; for in that event there is no necessary inconsistency in finding an applicant not disabled at time $t$ but disabled at $t+1$. There thus is no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits.

*Groves v. Apfel*, 148 F.3d 809, 810-811 (7th Cir. 1998) (Posner, C.J.).